1    **LAW OFFICES OF DENNIS RASMUSSEN**
2    **DENNIS RASMUSSEN (CA SBN 153479)**
     Email: dennisrasmussen@realestatelawcenter.org
3    750 East Green Street, Suite 333
     Pasadena, California 91101
4    Telephone: (626) 683-8942
     Facsimile:  (888) 848-4570
5

6    Attorneys for Plaintiffs
     ESTATE OF SYLVIA BROWN
7    CHRISTOPHER DUFRESNE

8

9                 **UNITED STATES DISTRICT COURT**

10              **EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11   ESTATE OF SYLVIA BROWN | CASE NO.: 1:19-cv-00042-LJO-SKO |
| 12   CHRISTOPHER DUFRESNE | (Calaveras County Superior Court Case No: 18CV43734) |
| 13         Plaintiffs, | FIRST AMENDED COMPLAINT FOR: |
| 14     vs. | |
| 15 | 1.  CONSTRUCTIVE FRAUD |
| | 2.  STATUTORY VIOLATIONS |
| 16   JPMORGAN CHASE N.A. and DOES 1-100, | 3.  PROMISSORY ESTOPPEL |
|     Inclusive, | 4.  NEGLIGENCE |
| 17 | 5.  NEGLIGENT MISREPRESENTATION |
| 18         Defendants. | 6. VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ. |
| 19 | |

20

21      Plaintiffs, Estate of Sylvia Brown and Christopher Dufresne allege herein as follows:

22                        **THE PARTIES**

23       1.     Plaintiffs, Estate of Sylvia Brown and Christopher Dufresne, (mother and son) at

24 all times relevant, were *sui juris* and the lawful owners of certain real property located in the

25 County of Calaveras,  State of California, and commonly known as: 108 Sanguinetti Court,

26 Copperopolis, California,  95228, (hereinafter the "Subject Property").

27

28

_____

**FIRST AMENDED  COMPLAINT**

2.     Defendant, JPMORGAN CHASE N.A. (hereinafter "CHASE") was at all times relevant to this action a corporate entity organized under the Laws of the State of New York, with a principal place of business of 270 Park Avenue, New York, New York 10017.  At all times relevant in this action, CHASE purported to be authorized to conduct business within the State of California and, in fact, conducted business within the County of Calaveras on a regular basis. This Defendant has registered with the Secretary of State of California that its agent for service of process is CT Corporation, 818 W. 7th Street, Los Angeles, California 90017.

3.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these Defendants, and all unknown persons and entities claiming any legal or equitable right, title, estate, lien, or interest in the Subject Property adverse to Plaintiffs' title thereto, or any cloud on Plaintiffs' title thereto, by such fictitious names.  Plaintiffs will amend this Complaint to allege the true names and capacities when ascertained.

4.     Plaintiffs are informed and believe and based thereon allege that, at all times herein mentioned, each of the Defendants sued herein were the agents, employees, partners, co-conspirators, successors or predecessors in interest, and employers of the remaining Defendants and, in doing the things hereinafter alleged, were acting within the purpose and scope of such agency, employment and/or conspiracy.  Plaintiffs are further informed and believe and based thereon allege that the acts and conduct herein alleged of each such Defendants were known to, authorized by, and/or ratified by the other Defendants, and each of them.

5.     Whenever in this Complaint an act or omission of a corporation or business entity is alleged, said allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents,

**FIRST AMENDED  COMPLAINT**

servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

## CONSPIRING OFFICERS, EMPLOYEES AND AGENTS OF DEFENDANTS

6.      Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to each other in breaching their obligations to Plaintiffs as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

7.      Defendants, and each of them, knowingly and willfully conspired and engaged in a common enterprise and course of conduct to accomplish the wrongs complained of herein.  The purpose and effect of the conspiracy, common enterprise and common course of conduct was, inter alia, to financially benefit Defendants at the expense of Plaintiffs.  Defendants accomplished their conspiracy, common enterprise and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans.  By taking steps and making statements in furtherance of their wrongdoing, each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein and was aware of its overall contribution to and furtherance thereof.  Defendants' wrongful conduct acts include, inter alia, all of the acts that each of them was alleged to have committed in furtherance of the wrongful conduct complained of herein.

## JURISDICTION AND VENUE

8.      Pursuant to Code of Civil Procedure section §392(a), venue is proper in this

---

**FIRST AMENDED  COMPLAINT**

County because the Subject Real Property is located within the County of Calaveras and because a substantial part of the transaction or occurrence giving rise to the claims alleged herein occurred within the County of Calaveras.

9.      The mortgage lending transactions and correspondence between Plaintiffs and Defendants occurred within this County.  The events transpired within this County.  The parties, witnesses, and Plaintiff reside within this County.  The evidence, including Defendant's business records, is located within this County, and the Defendant regularly conducts business within this County.

10.     Defendants engaged in business within the State of California related to the events which give rise to the instant lawsuit.  The subject events transpired within the State of California.  Defendants corresponded with Plaintiff via mail from locations that have an address in the State of California.  Defendants have "sufficient minimum contacts" with the State of California such that this Court's exercise of personal jurisdiction over Defendants herein "[does] not offend traditional notions of fair play and substantial justice".[1]

11.     CHASE'Ss s refusal to comply with the Home Owner Bill of Rights Statutes in 2017 (HOBR I) and in 2018 (HOBR II) and FDIC directives is a breach of their contracts with the Federal Government.  CHASE breached their duty to Plaintiffs to comply with these statutes and federal banking rules, evidencing that Plaintiffs have a strong probability of prevailing on the merits.  Plaintiffs argue that the Defendant, CHASE, purposefully was short-circuiting the review process so as to have an unimpeded path to foreclosure.

---

[1] *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

**FIRST AMENDED  COMPLAINT**

**FACTUAL BACKGROUND**

12.     This action arises out of loan activity related to the Subject Property, Plaintiffs'

home.  Plaintiffs have at all relevant times been the rightful owner of the subject property.  When

CHASE took over servicing, it took over responsibility for all Notes and Deeds of Trust subject

to all claims which Plaintiffs have against any of its predecessors and successors in interest.

These subsequent holders of the Notes and Deeds of Trust all stand in each other's shoes as they

are each successors in interest to Plaintiff's loan.

13.     Plaintiffs suffered a financial hardship in June, 2015 when Sylvia Brown, the co-

borrower passed away and the loss of her income and bills of the estate prevented Plaintiff

Christopher Dufresne from continuing to afford to pay the monthly mortgage payment.  Plaintiff

immediately contacted CHASE to explain the temporary financial hardship and CHASE

responded by representing that since the loan was current it could not offer any mortgage

assistance at this time.  CHASE instructed Plaintiffs to become three months delinquent and then

it would review them for a foreclosure alternative.

14.     Plaintiffs only became delinquent at the instruction of CHASE, as CHASE

represented to, and instructed, Plaintiffs that a precondition to being reviewed for foreclosure

assistance was to first become three months delinquent.  Plaintiffs did as instructed and once

CHASE learned that Plaintiffs were three months delinquent, it instructed Plaintiffs to submit an

application to be reviewed, referred to as a Request for Mortgage Assistance (RMA).  In

September, 2015 Plaintiffs submitted their first RMA.  At that time Plaintiffs had no idea that

CHASE would force them to submit seven others, a total of eight, in its plan and scheme to delay

for years the making of any determinations on foreclosure assistance, for the sole purpose of

**FIRST AMENDED  COMPLAINT**

manipulating the facts so to favor their planned foreclosure.  In other words, CHASE had no

intention of providing available assistance to Plaintiffs to save their home from foreclosure.

15.     CHASE denied this first RMA, the stated reason being insufficient income, and

instructed Plaintiffs to send in a second RMA with higher income.  Plaintiffs timely did as

instructed, increased their income, and submitted a second RMA with higher income.  Other

employees at CHASE, unaware of the mortgage assistance efforts of CHASE, recorded a Notice

of Default while these early RMA's were being reviewed.  The recording of Foreclosure

documents while under review is a clear violation of the statutes preventing "dual tracking,"

(Home Owner Bill of Rights) and evidence of fraud.   CHASE recorded this Notice of Default on

October 15, 2015 and a Notice of Trustee's Sale on January 20, 2016.

16.     In approximately March, 2016 Plaintiffs submitted their second RMA, as

instructed by CHASE.  CHASE represented that it was denying this second request on the

grounds that their investor did not participate in HAMP modifications.  First, that was a false

representation because HAMP applied to CHASE and its investors, and secondly, this fact that

CHASE was bound by HAMP was known to CHASE when it instructed Plaintiffs to submit the

first RMA.  CHASE's instructions to Plaintiff, in 2015, to apply for assistance is proof that

CHASE knew that assistance was possible.  After CHASE received the second RMA with higher

income, it contradicted its earlier reason for denial of assistance and came up with a new excuse,

that the investor did not offer modifications.  CHASE has never explained to date why it

solicited documents for possible loan modification (mortgage assistance) if it did not actually

offer modifications.  Indeed, no explanation would be possible because CHASE does routinely

offer modifications.

**FIRST AMENDED  COMPLAINT**

17.     This second different reason for denying assistance was false and fraudulent because CHASE would not have instructed Plaintiffs to become three months delinquent in order to be eligible for a review for mortgage assistance that it knew was not possible unless it was negligently or intentionally acting in bad faith.  Further evidence of the fraud of CHASE fabricating this second excuse can be seen by it then instructing Plaintiffs to submit a third RMA. CHASE's instructions to Plaintiffs to submit a third RMA clearly shows that their second reason for denial, that CHASE's investor did not offer modifications, was false.  CHASE is now exposed as trying to defraud Plaintiffs into giving up their home to foreclosure.

18.     In 2016 CHASE denied the third RMA.  Then, over the next two years, CHASE continued to instruct Plaintiffs to submit RMAs and then denied each one.  Such actions were malicious and in bad faith.  The eighth and last RMA submitted in early 2018 was denied by CHASE on the grounds that Plaintiffs failed the Net Present Value (NPV) test.  At this point, CHASE had now given three different reasons for denying assistance; low income, investor did not modify and now failure to pass the NPV test.  This is evidence of fraud and misrepresentation by CHASE.  The investor not participating in offering modifications is a false excuse which CHASE provided to Plaintiffs.  Such a prohibition would have been known to CHASE prior to it soliciting documents for a review. One of two things is true. 1. Either CHASE "knew" and actually believed that the investor would never offer a modification in which case their continued invitations to provide documents for a loan modification review were malicious and in bad faith, or 2. CHASE was aware that the investor was willing to offer a loan modification, in which case their stated reason for denial, that the investor would not modify, was a lie.  CHASE'S continuing to enthusiastically solicit application after application for review is strong evidence that this excuse was false and fraudulent.  Further, the failed NPV test is also a

**FIRST AMENDED  COMPLAINT**

false and fraudulent excuse because a "failed" NPV would also have been discovered in all the prior seven (7) reviews, yet never once was it mentioned.

19.     CHASE's delay, untimeliness and mishandling of its review processes breached its duty to Plaintiffs. CHASE's conduct was in violation of the current Home Owner's Bill of Rights statutes which became effective January 1, 2018 (HOBR II).  Further, in 2016 and 2017, CHASE violated the first Home Owner's Bill of Rights statutes in effect until December 31, 2017, (HOBR I).

20.     Case law and the HOBR I and HOBR 11 (post January 1, 2018) prohibit bad faith attempts to avoid foreclosure and specifically prohibit misleading homeowners in the review process.

**FIRST CAUSE OF ACTION**

**CONSTRUCTIVE FRAUD**

**(Against CHASE)**

21.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though such have been fully set forth herein.

22.     Under California Civil Code Section 1573 it is unlawful for any party, through a misrepresentation of a material fact, to willfully obtain an advantage over another in a fiduciary/confidential/special relationship.  The California Civil Code prohibits constructive fraud where "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him."  Furthermore, constructive fraud is defined as "all acts, omissions, and concealments involving breach of equitable or legal duty, trust or confidence, and resulting in damage to another."

**FIRST AMENDED  COMPLAINT**

23.    The relevant California precedent that holds financial institutions do owe a duty of care in both the formal review process of applications and in their review of competent and reliable evidence to substantiate the right to foreclose (Civil code 2924.17) can be found in *Alvarez v. BAC  Inc*. (2014) 228 Cal. App. 4th 941, 950 and *Daniels v. Select Portfolio Servicing, Inc*. (2016) 246 Cal. Ap. 4th 1150, 1183.  CHASE instructed Plaintiff to submit applications, thereby creating a duty of care to review them accurately and in good faith based upon reliable evidence.  This dual tracking compounds the wrong doing of CHASE.  Plaintiffs now have, and have shown in their many applications, significant income to qualify for a foreclosure alternative.

24.    The scheme and plan of CHASE was to point out a problem with each submitted application and to instruct Plaintiffs to correct the problem in a new submitted application which it did for three years.  This "pretend and extend" behavior caused three years of arrears to accumulate.  The intentional causing of three years of arrears is a significant wrong doing by CHASE.  CHASE further breached its duty of care by acting in bad faith and by continuously changing its reasons for denial of foreclosure options and for repeated denials of the appeals of the first seven RMA's submitted. CHASE has refused to comply with the HOBR statutes effective January 1, 2018 (HOBR II) be refusing to provide all calculations, information and documents used for their numerous denials of assistance.

25.    Since January 1, 2010 California Civil Code section 2923.1 has created a fiduciary duty between a mortgage servicer, such as CHASE, and a residential borrower, such as Plaintiffs to treat each other in good faith and with a duty of care.  Further, the California Homeowner Bill of Rights (HOBR I), effective from January 1, 2013 to January 1, 2018 and the post 2018 statutes, (HOBR II) require complete applications to be reviewed, and if denied, require that a

**FIRST AMENDED  COMPLAINT**

specific explanation be supplied in writing laying out the reasons for the denial of relief, and a notice on how to request further documentation supporting any denial.  CHASE violated HOBR II in its denial of Plaintiffs' eighth RMA application.  CHASE's conduct herein violates these statutes by sabotaging and misrepresenting the status of Plaintiff's due process right to a review, knowing that Plaintiff's current income did qualify for a foreclosure option according to current banking standards. (See *Alvarez* and *Daniels* holdings).

26.   The standard for fraud is thus established by:

(1) The existence of a special relationship between the parties:  CHASE was in a special relationship with Plaintiff because it was the servicer which took on the review of Plaintiff's RMA's in order to qualify them for an available foreclosure option.  CHASE has failed to accurately, and in good faith, conduct and perform the mandatory pre-NOD contact.  Secondly, CHASE recorded foreclosure documents, a NOD and NOTS, while it was reviewing the applications which Plaintiffs submitted at CHASE's request. (Civil Code 2924.11).  *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal. App.4th 941; *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal. Ap. 4th 1150, 1183*Bushell v. JP Morgan Chase Bank, N.A.* (2013) 220 Cal. App. 4th 915, *West v. JP Morgan Chase Bank, N.A.* (2013) 214 Cal. App. 4th 780.  The above cases hold that CHASE, as a mortgage servicer, owes Plaintiffs, residential borrowers, a fiduciary duty of care in the review process to not mishandle or delay the performance of its review and to accurately communicate the status of the review.  Also, to comply with Civil Code 2924.17, it must review competent and reliable evidence of Plaintiffs'

FIRST AMENDED  COMPLAINT

income/affordability and eligibility for foreclosure options, which CHASE has failed to do no less than eight times.

(2) A false misrepresentation: Certain CHASE employees made false representations, namely: 1) that Plaintiffs' income was not sufficient; 2) that the investor did not offer foreclosure alternatives; and 3) that Plaintiffs failed the NPV test.  CHASE instructed Plaintiffs to submit eight applications (RMA's), and gave inconsistent and false reasons for denying each of them.

(3) In reference to a material fact: All the representations made herein by CHASE were in reference to Plaintiffs saving their home from foreclosure, which are very material facts.

(4) For the purpose of inducing the other part to rely on such representation: CHASE's representations were made to induce Plaintiffs to wait for it to complete its review of each application which it had instructed Plaintiffs to submit. This was a stalling tactic to unreasonably run up arrears and manipulate the home into foreclosure.

(5) On which the other party did justifiably rely: Plaintiffs are unsophisticated and inexperienced borrowers and CHASE is an experienced lender/servicer.  Most of the employees who contacted Plaintiff always represented that they (Plaintiffs) would be reviewed accurately and in good faith so to be able to achieve a valid and fair permanent foreclosure alternative. The fact that Plaintiffs continuously followed CHASE's instructions by submitting numerous applications is evidence of reliance. *Alvarez v. BAC Home Loans Servicing L.P.* (2014) 228 Cal. App.4th

---

**FIRST AMENDED  COMPLAINT**

941; *Bushell v. JP Morgan Chase Bank, N.A.* (2013) 220 Cal. App. 4th 915, *West v. JP Morgan Chase Bank, N.A.* (2013) 214 Cal. App. 4th 780.

(6) Which resulted in damages or injury: Defendant's conduct has caused: 1) Plaintiffs' mortgage arrears to unfairly grow; 2) the loss of the ability to ever obtain credit from negative comments to credit bureaus, and 3) caused attorney fees to be spent to right this wrong.

27.     Accordingly, as a result of all of the Defendant's deceitful and fraudulent conduct, Plaintiffs have suffered, and will continue to suffer, compensatory, general and special damages in an amount to be determined according to proof.  Additionally, Defendants acted with malice, fraud and/or oppression and, thus, Plaintiffs are entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**

**Cancellation of Instruments**

**(Against All Defendants, CHASE and GUARANTEE LLC)**

28.     Plaintiffs incorporate all paragraphs of the complaint as though set forth herein.

29.     The Trustee's Deed Upon Sale to Defendant Doe 1, GUARANTEE LLC, grants title to Defendant GUARANTEE LLC of the subject property, commonly known as 108 Sanguinetti Court, Copperopolis, California 95228.  The legal description is: Peninsula Estates, Lot 14; APN number 061-054-011.  At the time of the Trustee's Sale, Plaintiffs had tendered the arrears.  CHASE went forward with the Trustee's Sale to GUARANTEE.  Prior to the sale CHASE had negotiated a lump sum payment of arrears, even though requiring upfront lump sum payments for a foreclosure option is unlawful.  GUARANTEE was the sole third party bidder on the property.  The current Fair Market Value at the time of the sale was approximately $1,400,000.00.  CHASE sold the property to GUARANTEE LLC for approximately

---

**FIRST AMENDED  COMPLAINT**

$560,000.00, allowing GUARANTEE to make a profit in excess of $800,000.00. This sale was the product of collusion and insider information; otherwise there would have been significant bidding by other buyers for this very lucrative transaction.

30.   By this complaint, Defendants CHASE and GUARANTEE LLC are notified of the Plaintiffs' intent to cancel the Trustee's Deed Upon Sale.

## THIRD CAUSE OF ACTION

### Quiet Title

### (Against All Defendants)

31.   Plaintiffs refer to each and every paragraph above, and by this reference, incorporate them herein as if set forth in full.

32.   Plaintiffs seek to quiet title to the subject property against the claims of CHASE and GUARANTEE LLC.

33.   Defendant GUARANTEE LLC has no right, title, estate, lien or interest in the Subject Property. GUARANTEE LLC purchased this property to make an immediate windfall profit in the approximate sum of $800,000.00 as the result of collusion and conspiracy with CHASE and its realtors.

34.   Plaintiffs name as Defendants in this action all persons unknown, claiming any legal or equitable, right, title, estate, lien, or interest in the Subject Property adverse to Plaintiffs' title, or any cloud upon Plaintiffs' title thereto, and GUARANTEE LLC. The claims of each such unknown defendant are without any right, and these defendants have no right, title, estate, lien, or interest in the Subject Properties, nor any part thereof.

35.   Plaintiffs seek to quiet title to 108 Sanguinetti Court, Copperopolis, California 95228. The legal description is: Peninsula Estates, Lot 14; APN number 061-054-011. Title to

---

**FIRST AMENDED  COMPLAINT**

the Subject Property should be quieted in favor of Plaintiffs Christopher Dufresne and the Estate of Sylvia Browne.

## FOURTH CAUSE OF ACTION

### PROMISSORY ESTOPPEL

#### (Against CHASE)

36.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though such have been fully set forth herein.

37.     Promissory estoppel affords the Plaintiff a remedy even where the Defendants received no consideration for its promises because the Plaintiff relied upon the word and representations of the Defendants.  Where a party acts to its detriment in reliance on a promise, promissory estoppel affords that party a remedy.

38.     The elements of promissory estoppel are:  (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made that is (3) both reasonable and foreseeable; and (4) injury caused by the party's reliance on the promise. *Advanced Choices, Inc. v. State Dept. of Health Services* (2010) 182 Cal.App.4th 273, 284.  The standard for promissory estoppel is thus established by:

> (1) The party to be estopped must know the facts: From 2015 to 2018 CHASE knew the status of Plaintiffs' financial affairs.  CHASE knew that its employees had represented that there would be no foreclosure until Plaintiffs' financial and income records were properly reviewed.

> (2) The party must intend that his or her conduct will be acted on: CHASE intended that their conduct of representing the availability of foreclosure options, while communicating to Plaintiffs that they should keep submitting applications for foreclosure alternatives, would cause Plaintiffs to be submissive to their

instructions and not seek other available remedies, and not seek outside funding or foreclosure prevention services or bankruptcy.

(3) The promise must be clear and unambiguous:  From 2015 through 2018 CHASE promised Plaintiffs that it would complete an accurate and good faith review of their financial records to substantiate they did not qualify for any available foreclosure option, before it conducted any foreclosure activity.

(4) The party asserting the estoppel must be ignorant of the true state of the facts: Plaintiffs were ignorant of the fact that the above promises and representations by CHASE were false and intended to cause Plaintiffs to have a false sense of security that their only option to save their home was to wait for CHASE to complete its review and offer an available foreclosure option based upon the review.

(5) The party must rely upon the promise to his or her detriment: Due to CHASE's promises, Plaintiffs refrained from seeking alternative financing with other lenders or filing for Chapter 13 bankruptcy. CHASE concealed the fact that it would foreclose at any time and refused to conduct a good faith review of the numerous applications which it repeatedly instructed Plaintiff to submit.  CHASE should be estopped from claiming any benefit from the potential foreclosure of Plaintiffs' home due to its unfair treatment of Plaintiffs in the review process. [2]

---

[2] The elements of estoppel are (1) the party to be estopped must know the facts; (2) the party must intend that his or her conduct will be acted on, or must act in such a way that the party asserting the estoppel had the right to believe that the conduct was so intended; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and, (4) that party must rely upon the conduct to his or her detriment. (See *Ashou v. Mutual Fire Ins. Co.* (2006) 138 Cal.App.4[th] 748, 766-767 [41 Cal.Rptr.3d 819].)

**FIRST AMENDED  COMPLAINT**

39.    As a direct, proximate and foreseeable result of Plaintiffs' reliance on CHASE's clear and unambiguous promises, Plaintiffs have suffered monetary damages including, but not limited to, out of pocket expenses, damage to their FICO score, and legal and attorney's fees to bring and maintain the instant lawsuit.  Plaintiffs have suffered, and will continue to suffer, general and special damages in an amount according to proof at trial.

**FIFTH CAUSE OF ACTION**

**STATUTORY VIOLATION OF CALIFORNIA CIVIL CODE § 2923.5, 2923.55 and §2924.11**

**(Against CHASE)**

40.    Plaintiffs incorporate herein by this reference each and every allegation set forth above, as though fully set forth herein.

41.    On July 8, 2008, Governor Schwarzenegger signed into law Senate Bill 1137. This Act, also known as the Perata Mortgage Relief Bill, was subsequently codified as Civil Code Sections (hereinafter "§") 2923.5, 2923.6, and 2923.7 (HOBR I).

42.    On January 1, 2018, HOBR II became effective with new provisions and modifications to *2923.5, 2923.7, 2924.11*, and *2924.17,* replacing these same statutes that were in effect until December 31, 2017..

43.    CHASE has violated California Civil Code *§ 2923.5* because it has not made accurate, truthful and good faith mandatory pre-NOD contact with Plaintiff.  CHASE has violated and continues to violate *§ 2923.5* and *§ 2924.17* by refusing to review competent and reliable evidence to substantiate default and the right to foreclose, including the borrowers loan status and loan information.  CHASE knows that Plaintiffs' income can support a reasonable payment.  *See Cal. Civ. Code. § 2923.5(a) and Cal. Civ. Code. § 2923.5(b).*  CHASE has not

**FIRST AMENDED  COMPLAINT**

made any truthful and good faith contact with Plaintiff to explore available foreclosure alternatives. Since January 1, 2018, CHASE violated section 2923.5 by refusing to have good faith and accurate contact and communications with Plaintiffs to achieve a foreclosure alternative.

44.   Under § 2924.11 CHASE must not conduct foreclosure activity upon receipt of a "complete modification application." CHASE has received completed applications continuously since late 2015 and yet gives false and conflicting reasons for the denying the offer of available foreclosure options. Evidence that CHASE knows these statutory requirements is that they are also required by the Consumer Fraud Protection Bureau (CFPB). CHASE is well versed with the requirements of the CFPB. CHASE has also violated *§ 2924.11* by never sending Plaintiffs any statement with specificity stating the reasons for denial of a foreclosure alternative in 2018, even though the complete data on the decision is available upon request.

45.   CHASE has violated *§ 2924.7* by not having any employee declare that they are the single point of contact. CHASE has continuously failed to communicate the true status of the loss mitigation process and has had different employees make conflicting representations at various times.

46.   Rather than complying with the statute as stated above, CHASE promised that a foreclosure option would be calculated based upon its review, and then refused to conduct an honest and accurate review.

47.   As a direct, foreseeable, and proximate result of CHASE's breach of California Civil Code statutes as described above, Plaintiffs have suffered monetary damages, including, but not limited to, out of pocket expenses and legal and attorneys' fees to bring and maintain the

**FIRST AMENDED  COMPLAINT**

instant lawsuit. Plaintiffs have suffered, and will continue to suffer, general and special damages in an amount according to proof at trial.

**SIXTH CAUSE OF ACTION**

**NEGLIGENCE**

**(Against CHASE)**

48.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though such have been fully set forth herein.

49.     The elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496].)

50.     At all times relevant herein, CHASE had a duty to exercise reasonable care and skill to not mishandle Plaintiffs' applications and not begin or conduct foreclosure activity until it had accurately and in good faith reviewed Plaintiffs' evidence of qualification for a foreclosure option. CHASE also had a duty to not make material misrepresentations or omissions about the status of Plaintiffs' loan account and the review process. *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal. App. 4th 68, *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal. Ap. 4th 1150, 1183, *Arnulfo Alvarez v. BAC Home Loan Servicing, L.P.* (2014) 228 Cal. App.4th 941; *Bushell v. JP Morgan Chase Bank, N.A.* (2013) 220 Cal. App. 4th 915, *West v. JP Morgan Chase Bank, N.A.* (2013) 214 Cal. App. 4th 780.

51.     CHASE owed Plaintiffs a duty to exercise reasonable care in handling their loan and the review process, especially after knowing that Plaintiffs had recovered from a financial hardship. The mishandling and delaying of the review process is what the courts have found to

**FIRST AMENDED  COMPLAINT**

be actionable negligence. *Alvarez v. BAC Home Loans Servicing, L. P., Inc.* (2014) 228 Cal. App. 4th 941, 950; *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal. Ap. 4th 1150, 1183; *Bushell v. JP Morgan Chase Bank, N.A.* (2013) 220 Cal. App. 4th 915, *West v. JP Morgan Chase Bank, N.A.* (2013) 214 Cal. App. 4th 780.

52.     CHASE breached its duty by refusing to conduct an accurate review of reliable and competent evidence of Plaintiffs' income so that a foreclosure option could be entered into and avoid foreclosure. By preventing a correct, accurate and good faith review from taking place, CHASE effectively prevented Plaintiffs from being able to receive the benefit of available foreclosure options. CHASE has mishandled and misrepresented the status of its review and has wrongfully, and in bad faith, prevented any accurate review process from taking place. *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal. App.4[th] 941; *Bushell v. JP Morgan Chase Bank, N.A.* (2013) 220 Cal. App. 4th 915; *West v. JP Morgan Chase Bank, N.A.* (2013) 214 Cal. App. 4th 780; *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal. Ap. 4th 1150, 1183.

53.     CHASE was obligated to honor its duty, established by case law and statutes, to offer mortgage assistance whenever the mortgage became delinquent and the borrower qualified for available alternatives to foreclosure.

54.     The standard for this duty of care is established by:

(1) The extent to which the transaction was intended to affect the Plaintiffs: The fraud by CHASE of putting Plaintiffs into a holding pattern by delaying and mishandling the review process was intended to affect Plaintiffs' ability to keep their home and affect its value by unfairly increasing the amount of arrears;

(2) The foreseeability of harm to Plaintiff: The harm of losing the home was

**FIRST AMENDED COMPLAINT**

foreseeable if CHASE was not truthful about the status of its review of Plaintiffs'

financial records to substantiate Plaintiffs' ability to resume payments on the

mortgage;

(3) The degree of certainty that the Plaintiffs suffered injury:  Plaintiffs have

now faced the loss of their home by way of foreclosure, and have suffered

from the negative reports submitted to credit bureaus thereby denying them

the opportunity to have credit or refinance this loan;

(4) The closeness of the connection between the Defendants' conduct and the

injury suffered: The injury of losing this home to foreclosure is directly connected

to CHASE's bad faith conduct in concealing the true facts and making false

representations about reviewing Plaintiffs for a foreclosure alternative;

(5) The moral blame attached to the Defendant's conduct: The concealment,

run-around, unfulfilled promises and conflicting representations from various

employees creates moral blame;

(6) The policy of preventing future harm: The public policy of preventing future

harm would require CHASE  to answer for its mistreatment of Plaintiffs.[3]

55.     CHASE created a duty as alleged above.  CHASE's concealment of the status of

Plaintiffs' loan and the foreclosure status is the runaround, mishandling, untimeliness, incorrect

and bad faith conduct the courts have found is actionable negligence.  Plaintiffs have suffered

---

[3] The legal duty of a lender to a borrower can be established using a six part test: (1) the extent to which the transaction was intended to affect the Plaintiff; (2) the foreseeability of harm to him; (3) the degree of certainty that the Plaintiff suffered injury; (4) the closeness of the connection between the Defendant's conduct and the injury suffered; (5) the moral blame attached to the Defendant's conduct; and (6) the policy of preventing future harm. This six part test was used in *Biakanja v. Irving* (1958) 49 Cal2d 647, 122 P.2d 294.

**FIRST AMENDED  COMPLAINT**

damage due to CHASE's wrongful causing of arrears to accumulate due to its refusal to conduct

an accurate and timely review so as to offer an available foreclosure option.

56.     As a proximate and foreseeable result of CHASE's breach of duty to Plaintiffs, as

alleged above, they have now faced the prospect of losing their home due to foreclosure.

57.     Plaintiffs have suffered monetary damages including, but not limited to, increased

arrears, out of pocket expenses, and legal and attorneys' fees to bring and maintain the instant

lawsuit.  Plaintiffs have suffered, and will continue to suffer, general and special damages in an

amount according to proof at trial.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

### (Against CHASE)

58.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though such have been fully set forth herein.

59.     The standard for negligent misrepresentation is established by:

1. A false representation by the Defendant: From 2015 through 2018, CHASE

concealed the true status of Plaintiffs' loan review and represented that it would

not foreclose until a review for a modification was completed;

2. That representation was false:  CHASE scheduled foreclosure

without conducting an accurate and good faith review;

3. That Defendants knew that the representation was false and made:

CHASE knew that Plaintiffs' qualified for available foreclosure alternatives, yet it

instructed Plaintiffs to send in repeated applications and spend years going

through what was represented as a good faith review all to no avail;

---

**FIRST AMENDED  COMPLAINT**

4. Made with the intent to induce another's reliance on the fact misrepresented: CHASE made its misrepresentations and concealments to prevent Plaintiffs from pursuing other remedies to prevent foreclosure;

5. Reasonable reliance on the representation: Plaintiffs are, and have been, desperate to save their home and are inexperienced and unsophisticated borrowers while CHASE was an experienced and sophisticated servicer; CHASE used its position of authority to convince Plaintiffs that they had no choice but to wait for the reviews to be accurately completed, which has not ever occurred;

6. Detrimental reliance and resulting harm: Due to CHASE's representations and conduct as stated herein, Plaintiffs actively refrained from seeking alternative financing with other lenders and pursuing other options. CHASE's conduct has resulted in the accumulation of excessive arrears and it breached its promise of completing an accurate and good faith review of Plaintiffs' financial status;

7. That the reliance on the representation was a substantial factor in causing the resulting harm: Plaintiffs had no way of knowing that they were not going to be reviewed and offered a foreclosure option.

60.    As a proximate result of CHASE's misrepresentations to Plaintiffs, they have suffered general and special damages in an amount to be proven at trial. Plaintiffs will, if necessary, amend this complaint to allege the exact amount of said damages once ascertained.

**FIRST AMENDED  COMPLAINT**

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF BUSINESS AND**

**PROFESSIONS CODE SECTIONS 17200,** *et seq.*

**(Against CHASE)**

61.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though such have been fully set forth herein.

62.     California Business & Professions Code Section 17200, et seq., also known as California's Unfair Competition Law (hereinafter the "UCL") prohibits acts of fraudulent, unlawful, or unfair business competition. Any fraudulent business acts or practices are likely to deceive and are fraudulent within the meaning of the UCL. Any unlawful business acts or practices are those in violation of some underlying law within the meaning of the UCL. Any unfair business acts or practices are those that threaten a violation of antitrust law.

63.     A "violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (1999). "In effect, the UCL borrows violations of other laws...and makes those unlawful practices actionable under the UCL." *Lazar v. Hert Corp.*, 69 Cal. App. 4th 1494, 1505 (1999). In addition, a claim for UCL stands or falls depending on the fate of antecedent substantive causes of action. *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001). At bar, CHASE has violated California Civil Code sections 2923.5, 2923.55 and 2924.11.

64.     "Unfair" conduct under the UCL has been commonly defined as conduct that "offends an established public policy or...is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917,

**FIRST AMENDED  COMPLAINT**

939 (2003).  When "determining whether the challenged conduct is unfair within the meaning of the unfair competition law...courts may not apply purely subjective notions of fairness." *Id.* at 941; see also *Cel-Tech Comms. V. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

65.     The unfair practices of CHASE are its conduct of promising that applications would be reviewed, and that Plaintiff's financial status would be accurately reviewed before substantiating a default existed, and foreclosure activity taking place,

66.     Specifically, as fully set forth herein, CHASE  engaged in deceptive business practices with respect to mortgage servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters by, among other things:

a)      Instituting improper or premature foreclosure proceedings to generate unwarranted fees ("dual tracking," not conducting a proper review, etc.);

b)      Executing and recording false and misleading documents;

c)      Executing and recording documents without the legal authority to do so;

d)      Misrepresenting the foreclosure and review status to borrower; and

e)      Other deceptive business practices.

67.     Plaintiffs allege that by engaging in the acts and/or practices as alleged herein, CHASE has violated several California laws and regulations and said predicated acts are, therefore, per se violations of California Business and Professions Code Section 17200, et seq.

68.     The foregoing acts and practices of pretending to review Plaintiffs for a loan modification, convincing them that their home was safe, then springing a foreclosure on them by refusing to allow them to pay the arrears is not only an unfair business practice, it is designed to cause substantial harm to California consumers.

**FIRST AMENDED  COMPLAINT**

69.     Plaintiffs allege that, as a direct and proximate result of the aforementioned acts, CHASE has prospered and benefited from Plaintiffs by collecting fees for foreclosure related services.  CHASE has been unjustly enriched from their act of refusing to offer the promised permanent modification.

70.     Further, Plaintiffs allege that CHASE's misconduct gave, and has given them an unlawful and unfair competitive disadvantage over their competitors to the detriment of Plaintiffs.  The scheme implemented by CHASE is designed to defraud California consumers, including Plaintiffs, and to enrich CHASE.

71.     Plaintiffs allege that, as a direct and proximate result of the aforementioned acts, CHASE has prospered and benefited from Plaintiffs.  Specifically, those Plaintiffs are now facing the prospect of losing their home forever at a Trustee's Sale.  Plaintiffs have suffered monetary damages, including, but not limited to, out of pocket expenses, and legal and attorney fees to bring and maintain the instant lawsuit.  Plaintiffs have suffered, and will continue to suffer, general and special damages in an amount according to proof at trial.

72.     By reason of the foregoing, CHASE has been unjustly enriched and should be required to disgorge its illicit profits and/or make restitution to Plaintiffs and other California consumers who have been harmed, and/or enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204.  Additionally, Plaintiffs are therefore entitled to injunctive relief and attorney's fees as available under California Business & Professions Code Section 17200 and related sections.

**FIRST AMENDED  COMPLAINT**

**WHEREFORE**, Plaintiffs prays for Judgment and Order against Defendants, as follows:

1. A temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants and their agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold Plaintiffs' home, either under the power of sale in the deed of trust or by foreclosure action; and staying any writ of possession or lockout from an unlawful detainer action;

2. That the Court order the Defendants to deliver to Plaintiffs the results of a completed review and a foreclosure option;

3. For the compensatory damages in an amount within the jurisdiction of this court, plus interest, according to proof;

4. For an award of punitive and exemplary damages in an amount according to proof at the time of trial;

5. For the disgorgement of all funds taken from Plaintiffs and any profits thereafter derived through use of such funds;

6. For general damages in an amount not less than according to proof at the time of trial;

7. For prejudgment interest on all damages awarded under Civil Code Section 3287(a);

8. For costs of suit including reasonable attorneys' fees;

9. For such other and further relief as the court may deem proper.

10. For the imposition of a constructive trust on 108 Sanguinetti Court, Copperopolis, California, 95228 claimed by Defendant GUARANTEE LLC and the return of title to Plaintiffs;

---

**FIRST AMENDED  COMPLAINT**

11.   For a judgment canceling the Trustee's Deed Upon Sale to GUARANTEE LLC.

12.   For an accounting, for an order that Defendants provide access to all relevant financial information, including without limitation, any and all mortgage records and impound account records regarding the mortgage payments Plaintiffs paid.

Dated:  February 12, 2019

LAW OFFICES OF

DENNIS RASMUSSEN

Dennis Rasmussen, Esq.
Attorney for Plaintiff

27 of 27

**FIRST AMENDED  COMPLAINT**

# PROOF OF SERVICE

### Estate of Sylvia Brown v. JP Morgan Chase, N.A. et al.

Case #: 1:19-cv-00042-LJO-SKO

I, Mary Rosendale, declare as follow:

I am a resident of the County of Los Angeles, State of California.  I am over the age of eighteen (18) and not a party to the within action.  My business address is: 750 East Green Street, Suite 333, Pasadena, California 91101. I am readily familiar with common practices for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

On February 13, 2019 I served the within First Amended Complaint on:

Joseph E. Addiego                             Michael Warda

DAVIS WRIGHT TREMAINE, LLP       Law Offices of Michael Warda

505 Montgomery Street, Suite 800         2350 W Monte Vista Ave,

San Francisco, CA 94111                     Turlock, CA 95382

[ X ]   by placing [   ] [   ] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

[ X ]   (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.
[X]

[ X ]   (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 13, 2019,  at Pasadena, California.


Mary Rosendale